IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ERIK GARCIA, )<br><br>Plaintiff, )<br>)<br>vs. )<br>)<br>TXCO LLC and HOUSTON FOODS, INC., )<br>)<br>Defendants. ) | CIVIL ACTION<br><br>Case No. 4:26-CV-01695 |

## COMPLAINT

COMES NOW, ERIK GARCIA, by and through the undersigned counsel, and files this, his Complaint against Defendants, TXCO LLC and HOUSTON FOODS, INC., pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG").   In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1.      This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendants' failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2.      Plaintiff, ERIK GARCIA (hereinafter "Plaintiff") is, and has been at all times relevant to the instant matter, a natural person residing in Houston, Texas (Harris County).

3.      Plaintiff is disabled as defined by the ADA.

1

4.      Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking and standing.

5.      Plaintiff uses a wheelchair for mobility purposes.

6.      In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA.  His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7.      Defendant, TXCO LLC (hereinafter "TXCO LLC"), is a domestic limited liability company that transacts business in the State of Texas and within this judicial district.

8.      Defendant, TXCO LLC, may be properly served with process for service via its Registered Agent, to wit:  c/o Salim Charolia, Registered Agent, 17819 Stuebner Airline Drive, Suite D, Spring, TX  77379.

9.      Defendant, HOUSTON FOODS, INC. (hereinafter "HOUSTON FOODS, INC."), is a domestic company that transacts business in the State of Texas and within this judicial district.

10.      Defendant, HOUSTON FOODS, INC., may be properly served with process for service via its Registered Agent, to wit:  c/o Shoukat Dhanani, Registered Agent, 4415 Highway

2

6, Sugar Land, TX  77478.

## FACTUAL ALLEGATIONS

11.    On or about December 4, 2025, Plaintiff was a customer at "Burger King," a restaurant located at 9349 Main Street, Houston, TX  77025, referenced herein as "Burger King". Attached is a receipt documenting Plaintiff's purchase.  *See* attached Exhibit 1 photograph documenting Plaintiff's visit to the Property.

12.    Two months later, on or about February 4, 2026, Plaintiff returned to Burger King.  *See* Exhibit 2.  Also attached is a photograph documenting Plaintiff's visit to the Property. *See* Exhibit 3.  The February 4, 2026, visit was Plaintiff's seventh visit as a customer.

13.    Defendant, TXCO LLC, is the owner or co-owner of the real property and improvements that Burger King is situated upon and that is the subject of this action, referenced herein as the "Property."

14.    Defendant, HOUSTON FOODS, INC., is a lessee or sublessee of the real property and improvements that Burger King is situated upon and is the subject of this action.

15.    Plaintiff lives less than 8 miles from the Property.

16.    Given the extremely close vicinity of the Property to Plaintiff's residence, Plaintiff travels by the Property on a weekly basis.

17.    Plaintiff's access to the Burger King located 9349 Main Street, Houston, TX 77025, Harris County Property Appraiser's property identification number: 0451910000202 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendants, TXCO LLC and HOUSTON FOODS, INC., are compelled to remove the physical

3

barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

18.    Defendant, TXCO LLC, as property owner, is responsible for complying with the ADA for both the exterior portions and interior portions of the Property.  Even if there is a lease between Defendant, TXCO LLC and the tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendant's independent requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations.  *See* 28 CFR § 36.201(b).

19.    Plaintiff has visited the Property seven times before as a customer and advocate for the disabled.  Plaintiff intends to revisit the Property within six months after the barriers to access detailed in this Complaint are removed and the Property is accessible again.  The purpose of the revisit is to be a return customer of this Burger King restaurant, to determine if and when the Property is made accessible and for Advocacy Purposes.

20.    Plaintiff intends on revisiting the Property to purchase food as a return customer of Burger King living in the near vicinity as well as for Advocacy Purposes but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous continuing barriers to access.

21.    Plaintiff travelled to the Property as a customer seven times previously and as an independent advocate for the disabled, encountered the barriers to access the Property that are detailed in this Complaint, engaged those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access present at the Property.

22.    Although Plaintiff may not have physically engaged each and every barrier to access identified in Plaintiff's Complaint, Plaintiff became aware of all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled within six months or sooner after the barriers to access are removed, it is likely that despite not actually encountering a particular barrier to access on one visit, Plaintiff may encounter a different barrier to access identified in the complaint in a subsequent visit as, for example, one accessible parking space may not be available and he would need to use an alternative accessible parking space in the future on his subsequent visit.  As such, all barriers to access identified in the Complaint must be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

23.    Plaintiff's inability to fully access the Property and the stores within in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by Congress and is historically viewed by Federal Courts as an injury in fact.

**COUNT I**
**VIOLATIONS OF THE ADA AND ADAAG**

24.    On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.

25.    Congress found, among other things, that:

(i)    some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)    historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)   discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)   individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)   the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

26.   Congress explicitly stated that the purpose of the ADA was to:

(i)   provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)   provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

* * * * *

(iv)   invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

27.   The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

28.   The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C.

6

§ 12181; 28 C.F.R. § 36.508(a).

29.    The Property is a public accommodation and service establishment.

30.    Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

31.    Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

32.    The Property must be, but is not, in compliance with the ADA and ADAAG.

33.    Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property as well as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

34.    Plaintiff intends to visit the Property again in the very near future as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more

specifically set forth in this Complaint.

35.     Defendants, TXCO LLC and HOUSTON FOODS, INC., have discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

36.     Defendants, TXCO LLC and HOUSTON FOODS, INC., will continue to discriminate against Plaintiff and others with disabilities unless and until Defendants, TXCO LLC and HOUSTON FOODS, INC., are compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

37.     A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed, or was made aware of prior to the filing of this Complaint, that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

i.     For one of the two accessible parking spaces, the access aisle to the accessible parking space is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

8

ii.  For one of the two accessible parking spaces, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards.  This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

iii.  For one of the two accessible parking spaces, the accessible parking space is not level due to the presence of an accessible ramp in the accessible parking space in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the van may rest upon the ramp and create an unlevel surface for Plaintiff to exit and enter their vehicle. Moreover, when the vehicle parks in this space, the vehicle blocks the accessible route to the ramp.

iv.  For one of the two accessible parking spaces, the accessible curb ramp is improperly protruding into the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards.  This barrier to access would make it difficult and dangerous for Plaintiff to exit/enter their vehicle.

v.  Both of the accessible parking spaces are not level due to the presence of accessible ramp side flares in the accessible parking spaces in violation of Sections 502.4 and 406.5 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter

their vehicle while parked at the Property as the van may rest upon the ramp and create an unlevel surface for Plaintiff to exit and enter their vehicle.

vi.    Due to a failure to enact a policy of proper parking lot maintenance, the ground surfaces of the access aisle have an opening with a width in excess of ½ inch in violation of Sections 302.3 and 502.4 of the 2010 ADAAG standards.    This barrier to access could cause the wheel of Plaintiff's wheelchair to get lodged in the opening causing difficulty and risk having the wheelchair tip over in a struggle to get removed from the gap.

vii.    The access aisle has a vertical rise in excess of ¼ inch and is in violation of Sections 303.2 and 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as well as make it difficult for Plaintiff to travel to the public accommodations offered at the Property as the vertical rise could cause the tire of the wheelchair to get snagged or impede movement.

viii.    One of the two accessible parking spaces is missing an identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

ix.    The bottom edge of the sign identifying the accessible parking space is at a height below 60 inches from the floor in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

10

x.    There are no accessible parking spaces on the Property that have a sign designating an accessible parking space as "Van Accessible" in violation of Section 208.2.4 of the 2010 ADAAG standards and Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate a van accessible parking space.

xi.   Due to the presence of grass and the lack of a nearby accessible route connecting the public sidewalk to the accessible entrance, the Property lacks an accessible route from the public sidewalk to the accessible entrance in violation of Section 206.2.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to utilize public transportation to access the public accommodations located on the Property.  To travel from the public sidewalk to the accessible entrance does not require traversing across a vehicular way.

xii.  Leading from the public sidewalk, there is an opening in the ground surfaces with a width exceeding ½ inch which would potentially cause the wheel of Plaintiff's wheelchair to get stuck in the gap and increasing the potential for Plaintiff's wheelchair to tip over in violation of Section 302.3 of the 2010 ADAAG Standards.

xiii. The door to the accessible entrance facing the main street lacks a clear minimum maneuvering clearance due to the fact the end of the latch side of the accessible entrance door being within 18 inches to the adjacent wall in violation of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would cause Plaintiff difficulty in utilizing the door to gain access to

this unit because individuals in a wheelchair have their feet and legs sticking out in front of them thus requiring additional space to reach the door hardware and open the door.  The current configuration of the accessible entrance of this unit blocks Plaintiff's ability to reach the door hardware and open the door.

xiv. As not all entrances comply with Section 404 of the 2010 ADAAG Standards, entrances that do comply with Section 404 of the 2010 ADAAG Standards are required to have signage identified by the International Symbol of Accessibility indicating an accessible entrance, however, no such signage exists on the Property in violation of Section 216.6 of the 2010 ADAAG Standards. Moreover, there is a lack of directional signage indicating the location of the nearest accessible entrance.  This barrier to access would make it difficult for Plaintiff to locate an accessible entrance on the Property.

xv. Inside Burger King, the door exiting the restroom area lacks a clear minimum maneuvering clearance, due to the proximity of the door hardware within 18 inches to the adjacent wall, in violation of Section 404.2.4 of the 2010 ADAAG standards.  This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely exit the restroom due to the fact individuals in wheelchairs have their feet sticking out in front of them and when there is inadequate clearance near the door (less than 18 inches), their protruding feet block their ability to reach the door hardware to open the door.

xvi. Defendants fail to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

**BURGER KING RESTROOMS**

xvii.    The restrooms have grab bars adjacent to the commode which are not in compliance with Section 604.5 of the 2010 ADAAG standards as the rear bar is not 36 inches in length. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely transfer from the wheelchair to the toilet and back to the wheelchair.

xviii.    The rear grab bar does not extend 12 inches from the centerline of the toilet to the adjacent wall in violation of Section 604.5.2 of the 2010 ADAAG Standards.  This barrier to access would make it difficult for Plaintiff to transfer from the wheelchair to the toilet and back. This barrier to access would make it difficult for Plaintiff to transfer from the wheelchair to the toilet and back.

xix.    The lavatories and/or sinks in the restrooms have exposed pipes and surfaces and are not insulated or configured to protect against contact in violation of Section 606.5 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely utilize the sink as the pipes underneath the sink typically have sharp surfaces and/or hot pipes, and since individuals in wheelchairs use a sink while seated, their legs are particularly vulnerable to these threats.

xx.    The accessible restroom signage is not located on the latch side of the door and is in violation of Section 703.4.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to locate accessible restroom facilities.

xxi.    The accessible toilet stall door is not self-closing and violates Section

604.8.1.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for the Plaintiff and/or any disabled individual to safely and privately utilize the restroom facilities.

xxii. The door of the restroom stall lacks a clear minimum maneuvering clearance, due to the proximity of the door hardware within 18" of the adjacent wall, in violation of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely exit the restroom due to the fact individuals in wheelchairs have their feet sticking out in front of them and when there is inadequate clearance near the door (less than 18 inches), their protruding feet block their ability to reach the door hardware to open the door.

xxiii. The size of the restroom stall is smaller than 60-inches in width and/or 56-inches in depth. As a result, the restroom lacks a toilet compartment compliant with Section 604.8.1 due to the lack of adequate size. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

xxiv. The restrooms have grab bars adjacent to the commode which are not in compliance with Section 604.5 of the 2010 ADAAG standards as the rear bar is not 36 inches in length. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely transfer from the wheelchair to the toilet and back to the wheelchair.

xxv. The rear grab bar does not extend 12 inches from the centerline of the toilet to the adjacent wall in violation of Section 604.5.2 of the 2010 ADAAG

14

Standards.   This barrier to access would make it difficult for Plaintiff to transfer from the wheelchair to the toilet and back. This barrier to access would make it difficult for Plaintiff to transfer from the wheelchair to the toilet and back.

xxvi.   The door hardware providing access to the restroom or stall is missing in violation of Section 404.2.7 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to utilize the restroom facilities.

xxvii.   The restroom door requires an opening force in excess of 5lbs (five pounds) in violation of Section 309.4 of the 2010 ADAAG standards.   This barrier to access would make it difficult for Plaintiff and/or any disabled individual to utilize the restroom facilities.

38.     The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

39.     Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

40.     According to the Harris County Property Appraiser website, while the Property was initially built in 1981, the "Effective Year Built" is 2012, as significant construction occurred in that year.   As such, the removal of barriers to access should be performed pursuant to the 2010 ADAAG Standards or the 1991 ADAAG Standards.

41.     The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

42.     All of the violations alleged herein are readily achievable to modify the Property into compliance with the ADA due to the fact the modifications necessary to cure the barriers to access identified in paragraph 36 of this Complaint are the specific types of barriers listed in 28 C.F.R. § 36.304 as readily achievable to modify.

43.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

44.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendant, TXCO LLC has the financial resources to make the necessary modifications.  According to the Property Appraiser, the appraised value of the Property is $1,786,800.00.

45.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendant, HOUSTON FOODS, INC., has the financial resources to make the necessary modifications. Defendant HOUSTON FOODS, INC. has as its Parent Company, the Dhanani Group, which operates between 1000 and 1300 restaurants and has revenue of over $1 billion.

46.     The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendants have available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction from the IRS for spending money on accessibility modifications.

47.     Upon information and good faith belief, the Property has been altered since 2010.

48.     In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with

16

the 1991 ADAAG standards.

49.     Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendants, TXCO LLC and HOUSTON FOODS, INC., are required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

50.     Plaintiff's requested relief serves the public interest.

51.     The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendants, TXCO LLC and HOUSTON FOODS, INC.

52.     Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendants, TXCO LLC and HOUSTON FOODS, INC., pursuant to 42 U.S.C. §§ 12188 and 12205.

53.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendants, TXCO LLC and HOUSTON FOODS, INC., to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court find Defendants, TXCO LLC and HOUSTON FOODS, INC., in violation of the ADA and ADAAG;

(b)     That the Court issue a permanent injunction enjoining Defendants, TXCO LLC and HOUSTON FOODS, INC., from continuing their discriminatory practices;

(c)     That the Court issue an Order requiring Defendants, TXCO LLC and HOUSTON FOODS, INC. to (i) remove the physical barriers to access and (ii) alter the Property to make it readily accessible to and useable by individuals with

disabilities to the extent required by the ADA;

(d)     That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(e)     That the Court grant such further relief as deemed just and equitable in light of the circumstances

Dated: March 2, 2026

Respectfully submitted,

/s/ Douglas S. Schapiro
Douglas S. Schapiro, Esq.
Southern District of Texas ID No. 3182479
The Schapiro Law Group, P.L
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com